**Octavio LEON, Plaintiff,**

v.

**The FIRST LIBERTY INSURANCE CORPORATION, Defendant.**

Case No. 8:12–cv–1613–T–30MAP.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 6, 2012.

(Dkt. 4–2).

**1320**

Brian Freeman, The Freeman Law Firm, PA, Ft. Myers, FL, for Plaintiff.

Jason M. Seitz, John Vincent Garaffa, Butler Pappas, LLP, Tampa, FL, for Defendant.

## ORDER

JAMES S. MOODY, JR., District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand to State Court and Supporting Memorandum (Dkt. 17), Defendant's Response to Plaintiff's Motion to Remand (Dkt. 18), the Court's Order (Dkt. 20), Defendant's Supplemental Response to Plaintiff's Motion to Remand (Dkt. 22), and Defendant's Supplemental

Affidavit in Support of Removal (Dkt. 23). The Court, having reviewed the motion, responses, and being otherwise advised on the premises, concludes that the motion to remand should be denied.

## BACKGROUND

This case originated in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida, and it is based on a claim for breach of a homeowner's insurance contract. Plaintiff Leon alleges that his insurance policy with Defendant First Liberty Insurance Corporation covers damage caused by sinkhole activity. In response to a claim based on sinkhole activity, First Liberty denied coverage to Leon because it concluded that the insured property had not sustained "structural damage."

On June 28, 2012, Leon filed his complaint in state court against First Liberty seeking damages for his sinkhole loss. On July 18, 2012, First Liberty filed its notice of removal to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. On September 4, 2012, Leon filed his motion to remand to state court based on First Liberty's failure to establish the necessary elements of diversity jurisdiction.[1]

## DISCUSSION

■ "Federal removal jurisdiction implicates the bedrock principles of federalism, comity, and a plaintiff's right to choose its own forum." *Harris Corp. v. Kollsman, Inc.*, 97 F.Supp.2d 1148, 1150 (M.D.Fla.2000). As a result, the removal statutes are strictly construed. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411

(11th Cir.1999). The removing party bears the burden of demonstrating that removal is proper. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001). And any doubts about jurisdiction should be resolved in favor of remand. *Univ. of S. Ala.*, 168 F.3d at 411.

■ Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000. *See* 28 U.S.C. § 1332(a). When, as here, damages are not specified in the state court complaint, the defendant seeking removal must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds . . . the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir.2010) (citation omitted). However, a removing defendant is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir.2010).

■ In determining the amount in controversy, the court should look to the complaint. *Id.* If the amount is indeterminate from the complaint alone, as it is in this case, the court can look to the notice of removal and other "evidence relevant to the amount in controversy at the time the case was removed." *Id.* In *Pretka*, the Eleventh Circuit held that a party seeking to remove a case to federal court pursuant to the first paragraph of § 1446(b), i.e., within the first thirty days after service, is not restricted in the types of evidence it

---

1. 28 U.S.C. § 1447(c) provides that the district court may remand a case after the thirty-day limit has expired if, at any time prior to final judgment, it appears that the court lacks subject matter jurisdiction. Thus, although Leon filed his motion to remand more than thirty days after the notice of removal, this Court may properly decide the motion to remand because it is based on lack of subject matter jurisdiction.

may use to satisfy the jurisdictional requirements for removal. *Id.* at 770–71. This evidence may include the removing defendant's own affidavit, declaration, or other documentation. *Id.* at 755. Moreover, district courts are permitted to make "reasonable deductions" and "reasonable inferences," and need not "suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *Id.* at 770. "Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe,* 613 F.3d at 1062–63.

■ Applying the guidelines set forth in *Roe* and *Pretka,* the Court concludes that the documents attached to First Liberty's response to the motion to remand, in light of the damages Leon seeks in the complaint, demonstrate that the amount in controversy exceeds $75,000. Leon argues that First Liberty fails to meet their burden. Based solely on the complaint, notice of removal, and affidavit of John V. Garaffa, counsel for First Liberty, the Court would agree. However, because the Eleventh Circuit has broadened the type of evidence a district court may consider, the Court concludes that First Liberty has shown by a preponderance of the evidence that the jurisdictional amount has been met.

Attached to its response to the motion to remand, First Liberty included two estimates of the cost to improve the soil conditions under the insured property and the cost to repair cosmetic damage to the Leon residence. First Liberty retained SDII Global, Inc., to investigate Leon's claim and provide a structural evaluation of the insured property. SDII estimates that remediating all sinkhole activity would cost $73,390. First Liberty also retained W.A. Neumann Construction, LLC, to esti-

mate the cost of repairing all cosmetic damage identified in SDII's structural evaluation. W.A. Neumann estimates that cost to be $28,734.62.

Additionally, although Leon did not specify an amount he was seeking in the complaint, the full replacement cost under the insurance policy for Leon's property is $243,200. In the complaint, Leon requests First Liberty "honor its obligations under its insurance policy with the Plaintiff."

Based on the two estimates and the insurance policy limits, the Court can reasonably deduce that the jurisdictional amount is satisfied in this case.

■ To obtain federal jurisdiction pursuant to 28 U.S.C. § 1332, a removing party must prove by a preponderance of the evidence that complete diversity exists between the plaintiff and the defendant. Under 28 U.S.C. § 1332(c)(1), a corporation's citizenship is determined by (1) its state of incorporation and (2) the state where it has its principal place of business.

■ In early 2010, the Supreme Court abrogated the Eleventh Circuit precedent concerning the standard by which to determine a corporation's principal place of business for purposes of diversity jurisdiction under 28 U.S.C. § 1332. *Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 1192, 175 L.Ed.2d 1029 (2010). In *Hertz,* the Court adopted the "nerve center" test which refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* The nerve center is normally the headquarters, "provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* Usually, the headquarters is a single place that

the public considers the corporation's main place of business. *Id.* at 1193.

The burden of persuasion still remains on the party asserting diversity jurisdiction. *Id.* at 1194. "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 1194–95.

Given the Supreme Court's recent adoption of the "nerve center" test, the Court concludes that First Liberty's principal place of business is Boston, Massachusetts. In Defendant's Supplemental Response to Plaintiff's Motion to Remand, First Liberty states that all corporate officers maintain their offices at 175 Berkeley Street, Boston, Massachusetts, and that they make strategic decisions for the corporation from that location. Additionally, First Liberty states that its Board of Directors meets and makes all corporate decisions at that same address. Likewise, Attorney Jason Seitz testifies to the same information in his affidavit filed in support of removal. Only three of First Liberty's twelve directors reside outside Massachusetts, while the remaining nine directors simultaneously serve as officers who are located in Boston. Based on its supplemental response and affidavit, First Liberty has proven by a preponderance of the evidence that its actual center of control is Boston, Massachusetts.

It is undisputed that First Liberty is incorporated in Illinois. Leon asserted in his complaint that he is a resident of Pasco County, Florida. Therefore, the Court finds there is complete diversity of citizenship for jurisdictional purposes.

It is therefore ORDERED AND ADJUDGED that Plaintiff's Motion to Remand to State Court (Dkt. 17) is DENIED.